IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                  No. CV 19-46 KG/SMV

NEW MEXICO ENVIRONMENT
DEPARTMENT, and JAMES KENNEY,
Secretary (in his official capacity),

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss or in the Alternative Motion for a More Definite Statement, filed February 18, 2019. (Doc. 4). Defendants New Mexico Environment Department and James Kenney, Secretary (jointly, NMED), ask the Court to abstain from exercising its jurisdiction over this case pursuant to the *Younger*, *Pullman*, and *Colorado River*, abstention doctrines. NMED also asks the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted, or, alternatively, order the United States to provide a more definite statement under Fed. R. Civ. P. 12(e). *Id.*

The United States filed a response to the Motion on March 14, 2019, NMED filed its reply on March 28, 2019, and the United States filed a surreply on April 10, 2019. (Docs. 15, 17, and 21). Having considered the briefing, the record, and the applicable law, the Court declines to abstain from exercising jurisdiction over this case, denies NMED's motion to dismiss the Complaint for failure to state a claim, and denies NMED's alternative motion for a more definite statement.

I.  *Background*

This case arises out of the United States' challenge to a hazardous waste disposal permit issued by NMED to Cannon Air Force Base (Permit). The Permit is issued pursuant to NMED's authority to implement a state hazardous waste program in lieu of the federal Resource Conservation and Recovery Act (RCRA) Subtitle C hazardous waste program. 42 U.S.C. § 6926(b). The United States relies on 28 U.S.C. §§ 1331 and 1345 for jurisdictional authority. (Doc. 1) at 2.

A.  *Resource Conservation and Recovery Act and New Mexico Hazardous Waste Act*

The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, was enacted in 1976 to address environmental and health dangers arising from improper solid waste treatment, storage, and disposal. Under RCRA, "hazardous wastes" are a subset of "solid wastes" and are subject to the more stringent "cradle to grave" standards of Subtitle C, 42 U.S.C. §§ 6921-6939b. The United States Environmental Protection Agency (EPA) administers RCRA's hazardous waste program by requiring owners and operators of facilities to obtain permits, issuing administrative compliance orders, and seeking civil and criminal penalties for violations. *See* 42 U.S.C. § 6928; 40 C.F.R. § 260.1, *et seq*. However, the EPA may authorize states to implement a state hazardous waste program in lieu of RCRA so long as the state program meets the minimum federal standards. 42 U.S.C. § 6926(b). RCRA does not preclude a state from adopting more restrictive requirements for the treatment, storage, and disposal of hazardous waste. 42 U.S.C. § 6929; 40 C.F.R. § 271.1(i)(1); *United States v. State of Colorado*, 990 F.2d 1565, 1569 (10th Cir. 1993) ("RCRA sets a floor not a ceiling for state regulation of hazardous wastes.") (quoting *Old Bridge Chems., Inc. v. New Jersey Dep't of Envtl. Protection*, 965 F.2d 1287, 1296 (3rd Cir. 1992)).

Once the EPA authorizes a state to carry out a state hazardous waste program in lieu of RCRA, any action taken by the state has "the same force and effect as action taken by the [EPA]," and the federal government must comply with RCRA or an EPA-authorized state program "to the same extent as any person." 42 U.S.C. §§ 6961, 6962. Thus, RCRA contains a waiver of sovereign immunity for federal facilities that engage in hazardous waste treatment.

In 1985, the EPA authorized New Mexico's hazardous waste program pursuant to RCRA and delegated to New Mexico "primary responsibility for enforcing its hazardous waste management program." 40 C.F.R. § 272.1601 (2019). New Mexico implemented this authority through the New Mexico Hazardous Waste Act (NMHWA), NMSA 1978, §§ 74-4-1 to -13 (Repl. Pamp. 2000). As part of the program, New Mexico issues operating permits to conduct certain hazardous waste operations. NMSA 1978, § 74-4-4.2 (Repl. Pamp. 2000). In order to receive a permit, an entity must submit an application to NMED and NMED processes the application according to NMHWA regulations. N.M. Admin. Code 20.4.1.901 (2018). NMED issues a draft permit and receives comments prior to issuing the final permit. *Id.* Under the NMHWA, "any person who is or may be affected by any final administrative action" by NMED may appeal that action to the New Mexico Court of Appeals within 30 days. NMSA 1978, § 74-4-14(A) (Repl. Pamp. 2000).

    *B. The Permit*

On December 19, 2018, NMED issued a Permit to Cannon Air Force Base under the NMHWA, thereby replacing a prior hazardous waste permit that was issued in 2003. (Doc. 4) at 3. The Permit requires the Permittee ("the United States, Department of Air Force, Cannon Air Force Base") "to conduct corrective action activities and to conduct tasks in accordance with a schedule of compliance," and "establishes the general and specific standards for these activities,

as required pursuant to the [NMHWA and the Hazardous Waste Management Regulations]."

(Doc. 1-1) at 11 (Permit § 1.3 "Permitted Activity"). Relevant to this case, the Permit contains the following definitions:

> *Contaminant* means any hazardous constituent listed in 40 CFR Part 261, appendix VIII and 40 CFR Part 264, appendix IX; any groundwater contaminant listed in the New Mexico WQCC Regulations at 20.6.2.3103 NMAC; any toxic pollutant listed in the New Mexico WQCC Regulations a 20.6.2.7.WW NMAC; methyl tertiary-butyl ether; perchlorate; polychlorinated biphenyls (PCBs); dioxins and furans; perfluorinated compounds including perfluorooctane sulfonate and perfluorooctanoic acid; and any other substance present in soil, sediment, rock, surface water, groundwater, or air for which the NMED determines that monitoring, other investigation, or a remedy is necessary to carry out the purposes of this Permit.
>
> *Corrective Action* means all corrective action, as defined in 20.4.2.7.I NMAC, necessary to protect human health and the environment for all releases of hazardous waste or hazardous constitutes, or other contaminants defined by this Permit Section (1.12), to the environment as required under HWA 74-4-4.2 (B) and 40 CFR 264.101. Corrective action may address releases to air, soil, sediment, surface water, or groundwater.
>
> *Hazardous Waste*, for the purposes of corrective action for solid waste management units and areas of concern conducted pursuant to 74-4-4.2(B) of the HWA, 40 CFR part 264, subpart F, or 40 CFR 270.32(b)(2), means a hazardous waste as defined in 74-4-3(I) of the HWA. Hazardous waste, for the purposes of corrective action, includes, without limitation any hazardous waste as defined in 40 CFR 261.3, any groundwater contaminant listed in the Water Quality Control Commission (WQCC) Regulations in 20.6.2.3103 NMAC, any toxic pollutant listed in 20.6.2.WW NMAC, any contaminant defined in this Permit Section (1.12) or for which the EPA has promulgated a maximum contaminant level (MCL) at 40 CFR parts 141 and 143, perchlorate, methyl tertiary butyl, ether, polychlorinated biphenyls (PCBs), dioxins, furans, perfluorinated compounds including perfluorooctane sulfonate and perfluorooctanoic acid, and munitions constituents as defined in 10 U.S.C. 2710(e)(3).
>
> *Hazardous Constituent* means any constituent identified in 40 CFR Part 261, Appendix VIII and any constituent identified in 40 CFR Part 264 Appendix IX.

*Id.* at 15-16 (Permit § 1.12 "Definitions").

### C. Federal Court and State Court Actions

On January 17, 2019, the United States filed this action for declaratory and injunctive relief raising a single claim that the Permit's definition of "hazardous waste" is inconsistent with the NMHWA and, thus, exceeds the scope of RCRA's waiver of sovereign immunity. (Doc. 1) at 4. The United States asks the Court to "[d]eclare that the language in Permit Section 1.12 defining 'hazardous waste' for the purpose of corrective action is contrary to the [NM]HWA, RCRA, and the relevant implementing regulations under each statute," and to set aside the unlawful provisions of the Permit. *Id.*

Also on January 17, 2019, the United States filed an appeal with the New Mexico Court of Appeals, raising the following claims: (1) the definitions of "hazardous waste" and "hazardous constituents" in the Permit exceed the scope authorized under the NMHWA; (2) the NMHWA does not provide for regulation of "contaminants" or permit terms addressing "contaminants;" (3) the definition of "corrective action" in the Permit is inconsistent with the NMHWA because it references definitions of hazardous waste and hazardous constituents that are not in accordance with law and because it references "contaminants;" and (4) the administrative record for the Permit does not support the "cleanup levels" in the Permit or any requirement pertaining to the cleanup of substances that are not "hazardous wastes" or "hazardous constituents" as those terms are defined in the NMHWA. Docketing Statement filed in N.M. Ct. App. No. A-1-CA-37887. The state case has been stayed pending this Court's decision on NMED's Motion to Dismiss. Order dated April 10, 2019, filed in N.M. Ct. App. No. A-1-CA-37887.

In its Motion to Dismiss, NMED asks the Court to abstain from considering the United States' Complaint under the *Younger, Pullman,* and *Colorado River* abstention doctrines. (Doc.

5

4) at 4-9. NMED also moves for dismissal of the Complaint for failure to state a claim upon which relief can be granted or, alternatively, for a more definite statement under Fed. R. Civ. P. 12(e). *Id.* at 9-13.

II. *Discussion*

A. *Abstention*

The federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Conservation Dist.*, 424 U.S. at 817. "This duty is not, however, absolute." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Undoubtedly, "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Id.* (citations omitted).

Consideration of a motion to dismiss based on principles of abstention is similar to a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Stein v. Legal Adver. Comm. of Disciplinary Bd.*, 272 F. Supp. 2d 1260, 1264 (D.N.M. 2003). The Tenth Circuit has explained that a district court must address abstention "at the outset because a determination that the district court lacked jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge." *D. L. v. Unified Sch. Distr. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004). The Tenth Circuit has also explained that, because

abstention is a jurisdictional bar, a district court should evaluate abstention by considering all of the facts before the court, not only those in the complaint underlying the motion to dismiss. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (explaining when reviewing abstention-based challenge to subject matter jurisdiction, courts "may not presume the truthfulness of the complaint's factual allegations" and have wide discretion to review other documents to resolve disputed jurisdictional facts); *see also Hill v. Whetsel*, 2007 WL 963216, at *1 (W.D. Okla.).

### 1. *Younger*

NMED first argues the *Younger* abstention doctrine applies in this case because there is an ongoing state court proceeding, the state forum provides an adequate opportunity to address the United States' federal claims, and the state proceeding involves important state interests. (Doc. 4) at 5-8. In response the United States contends this case does not meet the threshold considerations to apply *Younger*. (Doc. 15) at 4. Specifically, the United States argues the *Younger* abstention doctrine is only available for ongoing state criminal proceedings, civil enforcement proceedings, or civil proceedings implicating a state court's ability to perform its judicial functions. (Doc. 15) at 4-5. The United States further argues that even if this is the type of case for which *Younger* abstention is available, the state proceeding does not involve sufficiently important state interests to warrant abstention. *Id.* at 6-7.

In *Younger*, the United States Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great and immediate irreparable injury. *See* 401 U.S. at 43-45. This decision rested on "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Later cases have expanded *Younger* abstention principles to civil

proceedings. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) (explaining "concern for comity and federalism has led us to expand the protection of *Younger* beyond state criminal prosecutions to civil enforcement proceedings, and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions") (citations omitted).

The Tenth Circuit traditionally has held that *Younger* abstention is appropriate when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests that traditionally look to state law for their resolution or implicate separately articulated state policies. *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). The United States agrees there is an ongoing state proceeding and that the state proceeding would provide an adequate forum to address the United States' claims. (Doc. 15) at 6 n.5. However, the United States argues the Supreme Court's decision in *Sprint Communications, Inc. v. Jacobs*, disapproved of the "important state interests" element of this test, finding that, in combination with the other two elements, it "would extend *Younger* to virtually all parallel state and federal proceedings." 571 U.S. 69, 81 (2013). Such a result, the Supreme Court said, would be contrary to *Younger's* characterization as an abstention doctrine designed for "exceptional circumstances." *Id.* at 82. The Supreme Court, therefore, clarified that *Younger* applies in only three types of proceedings: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *Id.* at 78 ("[T]o guide other federal courts, we today clarify and affirm that *Younger* extends to the three exceptional circumstances … but no further.").

In its reply, NMED does not dispute that *Sprint* foreclosed courts from determining *Younger* abstention based on the "important state interests" element of the *Amanatullah* test. (Doc. 17) at 2-6. Instead, NMED argues this case qualifies as the second *Younger*-type proceeding—a civil enforcement proceeding. *Id.* at 3. The United States, however, argues this case does not fall into any of the three categories of *Younger* cases. (Doc. 15) at 4.

First, the Court agrees that *Sprint* clarified that *Younger* abstention is limited to the three enumerated types of proceedings. *See Catanach v. Thomson*, 718 Fed. Appx. 595, 597 n.2 (10th Cir. 2017) (noting *Sprint* "significantly limited the reach of *Younger* to" the three types of proceedings and disapproved reliance on "important state interests" test); *MacIntyre v. JP Morgan Chase Bank*, 2015 WL 1311241, *2 (D. Colo.) ("*Sprint* significantly cabined the breadth of *Younger* abstention as it has been applied in this circuit. As *Sprint* clarifies, a court evaluating whether *Younger* requires abstention must determine not whether a proceeding involves any important state interest, but whether it falls under one of the three specifically enumerated categories."). In addition, the Court finds the state proceeding does not qualify as the first type of proceeding because it is not a criminal prosecution.

Next, the Court finds the state proceeding is not the third type of *Younger* proceeding, which is limited to civil proceedings implicating a state's interest in enforcing the orders and judgments of its courts. *Sprint*, 571 U.S. at 78. In setting this standard the Supreme Court in *Sprint* relied on its prior decisions in *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (ruling *Younger* should have been applied in light of state court contempt proceedings), and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (ruling *Younger* should have been applied to action challenging procedure used to obtain state court judgment). Both of these cases "involved processes the state courts used to decide cases and enforce judgments, *i.e.*, functions that are

uniquely judicial functions." *Marie v. Moser*, 65 F. Supp. 3d 1175, 1198 (D. Kan. 2014); *see also Catanach v. Thomson*, 718 Fed. Appx. 595, 598 n.2 (10th Cir. 2017) (defining third *Younger* category as "civil proceedings implicating a state's interest in enforcing the orders and judgments of its courts such as state court contempt proceedings"). The state court proceeding here does not implicate the state's interest in enforcing its courts' orders or judgments, so it does not constitute the third type of *Younger* proceeding.

NMED argues the state case qualifies as the second type of *Younger* proceeding because it is a civil enforcement proceeding. (Doc. 17) at 3. NMED asserts the state proceeding is for enforcement purposes because the Permit is issued to correct past releases of hazardous waste, and it "requires and sets deadlines for corrective action to address the risks from known or suspected past releases of hazardous wastes or constituents at Cannon." *Id.* at 5. Therefore, NMED contends the state proceeding is "coercive in nature" and "appropriate for abstention." *Id.* (citing *Brown ex. rel. Brown v. Day*, 555 F.3d 882, 890 (10th Cir. 2009)).

The Supreme Court has explained *Younger* civil enforcement proceedings generally concern state proceedings "akin to criminal prosecutions in important respects," such as actions that are "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Sprint*, 571 U.S. at 79. "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Id.*; *see also Catanach*, 718 Fed. Appx. at 598 n.2 (defining *Younger* civil enforcement proceedings as "akin to criminal prosecutions such as state-initiated disciplinary proceedings against a lawyer for violation of state ethics rules"). Here, NMED did not initiate the action in state court and is not seeking to sanction the United States. While NMED is correct that the Permit provides for the initiation of corrective action, the purpose of the current state proceeding is to consider the discreet issue of

10

the Permit's definition of "hazardous waste"—not to initiate corrective action, sanction the United States, or enforce any provisions of the Permit. Moreover, this case does not involve investigations or the filing of charges, which the Supreme Court in *Sprint* explained are "commonly involved" in civil enforcement proceedings that are akin to criminal prosecutions. *Id.* Therefore, the Court finds the state proceeding does not constitute a civil enforcement proceeding that is akin to a criminal prosecution.

In addition, NMED contends the state case is a civil enforcement proceeding under *Younger* because the NMHWA directs appeals of its permitting and enforcement provisions to the New Mexico Court of Appeals. (Doc. 17) at 3. First, the provision of the NMHWA regarding the administrative permitting process states that a party affected by final administrative action under the NMHWA "*may* appeal to the court of appeals for further relief within thirty days after the action." NMSA 1978, § 74-4-14(A) (Repl. Pamp. 2000) (emphasis added). Thus, the NMHWA's procedure of appealing final administrative actions to the New Mexico Court of Appeals is permissive, not mandatory. Moreover, the NMHWA provides entirely different procedures for its administrative permitting procedures and its civil enforcement proceedings. *Compare* NMSA 1978, § 74-4-4.2 (Repl. Pamp. 2000) and N.M. Admin. Code 20.4.1.901 (2018) (establishing NMHWA administrative permitting procedures) *with* NMSA 1978 § 74-4-10 (Repl. Pamp. 2000) (NMHWA civil enforcement procedures allowing NMED to initiate proceedings and assess penalties for noncompliance with NMHWA and permit requirements). Importantly, the administrative permitting process culminates in the issuance of a final permit, not with a complaint or charges. For these reasons, the Court concludes the NMHWA's permissive appeal procedure to the New Mexico Court of Appeals for permitting issues does not equate to a civil enforcement proceeding requiring the Court to abstain under *Younger*.

11

The Court also addresses NMED's reliance on *Brown ex. rel. Brown v. Day* for its contention that the permit proceeding is "coercive in nature." (Doc. 17) at 5. In *Brown*, the Tenth Circuit considered whether the district court was correct to abstain in favor of an administrative proceeding for which state court judicial review was still available. 555 F.3d at 888. The Tenth Circuit explained this inquiry turned on whether the administrative proceeding was remedial or coercive, and that only coercive administrative proceedings require deference. *Id.* at 888-89. The Tenth Circuit explained that to determine whether an administrative proceeding is coercive or remedial, courts should consider: (1) "whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against her, making her participation mandatory;" (2) whether "the federal plaintiff contends that the state proceeding is unlawful (coercive)" or "the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial)"; and (3) "if the federal plaintiff sought to thwart a state administrative proceeding initiated to punish the federal plaintiff for a bad act." *Id.* at 889-91.

Again, the state court proceeding was initiated by the United States, not the NMED. In addition, the United States does not contend the administrative proceeding itself was unlawful, but instead seeks a remedy for its allegation that the Permit's definition of hazardous waste violates the NMHWA and RCRA. And finally, there is no state administrative proceeding that was initiated to punish the United States. To the contrary, while the Permit addresses "corrective action," the Permit is part of a broader regulatory program for hazardous waste and all permits for activities related to hazardous waste under the NMHWA require provisions for corrective action. *See* NMSA 1978 § 74-4-4.2(B) (Repl. Pamp. 2000) ("Hazardous waste permits shall require corrective action for all releases of hazardous waste or constituents from any solid waste

management unit at a treatment, storage or disposal facility seeking a permit under this section."). Therefore, the Court finds that *Brown* does not support NMED's argument that the state proceeding constitutes a *Younger* civil enforcement proceeding.

For the reasons stated above, the Court finds there is no ongoing state administrative proceeding that requires this Court to abstain under *Younger*. In reaching this conclusion, the Court is mindful that abstention "is the exception, not the rule, and hence should be rarely invoked." *Brown ex rel. Brown*, 555 F.3d at 888 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)).

### 2. *Pullman and Colorado River*

Next, NMED briefly states that abstention is appropriate under the *Pullman* and *Colorado River* abstention doctrines. (Doc. 4) at 8-9. The United States responds that neither of these doctrines apply in this case. (Doc. 15) at 7-8.

*Pullman* abstention is founded on the notion that federal courts should avoid unnecessary federal court review of the constitutionality of state law. *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941); *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1118-19 (10th Cir. 2008). The danger is that a federal court may render "a constitutional determination [ ] predicated on a reading of the [state] statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." *Moore v. Sims*, 442 U.S. 415, 428 (1979). *Pullman* abstention is appropriate when three elements are present: (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation would obviate the need for or substantially narrow the scope of the constitutional claim; and (3) an incorrect decision of state law by the federal court would hinder

13

important state law policies.  *Stout*, 519 F.3d at 1118-19.  Here, there is no constitutional challenge to a state law so the *Pullman* abstention doctrine does not apply.[1]  *Cf. Caldera v. City of Boulder*, 341 F. Supp. 3d 1241, 1245 (D. Colo. 2018) (finding *Pullman* abstention appropriate to allow Colorado state court to initially determine whether municipal ordinances governing the sale or use of firearms are preempted by state statute).

In *Colorado River*, the United States Supreme Court recognized that a federal court faced with parallel state proceedings may in "exceptional" circumstances abstain "for reasons of wise judicial administration."  *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).  To determine whether parallel judicial proceedings present exceptional circumstances warranting abstention under *Colorado River*, a court must weigh several factors, including: (1) "whether either court has assumed jurisdiction over property;" (2) "the inconvenience of the federal forum;" (3) "the desirability of avoiding piecemeal litigation;" (4) "the order in which the courts obtained jurisdiction;" (5) "the vexatious nature of the litigation;" (6) "whether federal law provides the rule of decision;" and (7) "the adequacy of the state court action to protect the federal plaintiff's rights."  *Id.* at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 nn.20, 23, 28 (1983).  These factors are not a "mechanical checklist;" rather, the Court should "careful[ly] balanc[e] the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16; *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

---

[1] In its reply NMED appears to abandon its argument that the *Pullman* abstention doctrine applies and, instead, asks the Court to apply the *Colorado River* doctrine if it does not find that *Younger* abstention is appropriate.  (Doc. 17) at 8.

14

NMED argues that RCRA's requirement that federal agencies are subject to the same state substantive and procedural requirements as any other person constitutes "exceptional circumstances" justifying abstention under *Colorado River*. (Doc. 17) at 8. Nevertheless, the United States' appeal of the Permit to the New Mexico Court of Appeals was filed at the same time as the federal complaint, the state proceeding has been stayed pending a decision in this Court, and the issue in this case will involve consideration of federal law in interpreting the contours of RCRA's waiver of sovereign immunity. As such, the Court finds this case does not present the exceptional circumstances required for *Colorado River* abstention, especially since the Court's "task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26; *cf. D.A. Osguthorpe*, 705 F.3d 1223, 1233-34 (10th Cir. 2013) (affirming district court's dismissal of case under *Colorado River* because the federal complaint was filed after four years of "aggressive" state court litigation in a "sprawling case" with thousands of entries in a 200-page record).

### B. Failure to State a Claim

NMED also moves under Fed. R. Civ. P. 12(b)(6) to dismiss the United States' Complaint for failure to state a claim upon which relief may be granted. (Doc. 4) at 9-12. NMED argues the United States fails to meet the pleading standard of Fed. R. Civ. P. 8(a)(2) which requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 9. Specifically, NMED asserts the Complaint does not provide factual support for the claim and does not sufficiently explain how the Permit is deficient. *Id.* at 9-12.

The United States responds that it is not subject to the well-pleaded complaint rule, but further argues that even if that rule applied, the Complaint is sufficient to state a claim that is plausible on its face. (Doc. 15) at 8. The United States contends that its claim that the Permit's definition of hazardous waste is inconsistent with the NMHWA and exceeds the scope of RCRA's waiver of sovereign immunity is a question of law and is properly set forth in the Complaint. *Id.* In its reply, NMED agrees the United States is not subject to the well-pleaded complaint rule but, nevertheless, it is subject to the federal pleading standard articulated in *Twombly* and *Iqbal*. (Doc. 17) at 9-11. NMED maintains the United States failed to meet this standard. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations which, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Moreover, the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders naked assertions devoid of further factual enhancement" does not meet the Rule 8(a)(2) pleading standard. *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court first addresses the United States' contention that it is not subject to the well-pleaded complaint rule. The well-pleaded complaint rule requires that, in cases where jurisdiction is based on a federal question, "the federal question giving rise to jurisdiction must appear on the face of the complaint." *Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 2003); *see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (explaining

16

the well-pleaded complaint rule also means federal-question jurisdiction may not be predicated on a defense that raises federal issues).  However, the Tenth Circuit has explained that because 28 U.S.C. § 1345 confers federal jurisdiction over suits in which the United States is the plaintiff, such cases are not subject to the well-pleaded complaint rule.  *Fed. Home Loan Bank Bd., Washington, D.C. v. Empie*, 778 F.2d 1447, 1450 (10th Cir. 1985).  Nevertheless, NMED does not contest the Court's jurisdiction on this ground; instead, NMED argues the Complaint fails to meet the *Iqbal/Twombly* pleading standard, which applies to all plaintiffs including the United States.  *See, e.g., United States ex rel. Hanlon v. Columbine Mgmt. Servs., Inc.*, 676 Fed. Appx. 787, 791 (10th Cir. 2017) (relying on *Iqbal* to dismiss United States' complaint).  Therefore, the Court will consider NMED's contention that the Complaint fails to state a claim.

In the Complaint, the United States explains the permitting procedure under the NMHWA and RCRA, provides the NMHWA's and RCRA's definitions of hazardous waste, and notes the United States' limited waiver of sovereign immunity under RCRA.  (Doc. 1) at 1-3.  Based on these facts, the United States alleges that because the Permit issued to Cannon Air Force Base includes a definition of hazardous waste that is inconsistent with RCRA and the NMHWA, the definition exceeds the scope of RCRA's waiver of sovereign immunity "and so cannot be used in an [NM]HWA permit for a federal agency."  *Id.*  As relief, the United States asks the Court to declare the definition is contrary to the NMHWA, RCRA, and both statutes' implementing regulations, and to set aside the unlawful provisions of the Permit.  *Id.*

NMED argues the United States "nowhere applies the statutory provisions it identifies to any facts relevant to the Permit in order to explain the alleged deficiency in the Permit," and the United States "has failed to articulate any reason why it should now be exempted from the RCRA waiver of immunity."  (Doc. 4) at 11.  To the contrary, the Court finds the United States

17

has sufficiently explained the Permit is allegedly deficient because its hazardous waste definition exceeds the hazardous waste definitions in the NMHWA and RCRA, and that this deficiency is the reason why the United States alleges it is exempt from RCRA's waiver of sovereign immunity. These allegations are more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and instead reasonably infer NMED is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. Moreover, the Court notes that at least two cases in this district have considered very similar claims on the merits. *See United States v. State of New Mexico, et al.*, 2000 WL 36739782 (D.N.M.) (considering United States' claim that NMED's permit for Department of Energy's Waste Isolation Pilot Plant exceeded RCRA's definition of solid waste and negated United States' waiver of sovereign immunity); and *United States v. State of New Mexico, et al.,* 1992 WL 437983 (D.N.M.) (considering United States' clam that portions of permit issued to Los Alamos National Laboratory constituted regulation of radioactive waste and thus were beyond scope of RCRA's and NMHWA's definitions of hazardous and solid waste). For these reasons, the Court finds the United States has alleged facts sufficient to state a plausible claim for relief and the Court denies NMED's motion to dismiss under Rule 12(b)(6).

        *C. Motion for More Definite Statement*

Finally, if the Court does not dismiss the Complaint, NMED moves in the alternative under Fed. R. Civ. P. 12(e) for the United States to provide a more definite statement specifying which aspect of the Permit's hazardous waste definition is flawed. (Doc. 4) at 12-13. In response, the United States argues the Complaint "clearly articulates that the United States is challenging the definition of hazardous waste in the Permit." *Id.* at 8-9.

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," the responding party may

move for a more definite statement under Rule 12(e).  *Moya v. Schollenbarger*, 465 F.3d 444, 446 n.2 (10th Cir. 2006).  Whether to grant or deny a Rule 12(e) motion lies within the sound discretion of the court.  *See Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001).  However, motions for a more definite statement "are disfavored in light of the liberal discovery provided under the federal rules."  *EMC Mortgage LLC v. Pulte Mortgage LLC*, 2020 WL 836521, *11 (D. Colo.) ("Rule 12(e) motions should be denied unless the defendant can only guess as to what conduct or contracts an allegation refers, or the complaint is unintelligible.") (citations and internal brackets and quotation marks omitted); *see also Airtex Mfg. LLLP v. Boneso Brothers Constr, Inc.*, 2019 WL 6715411, *1 (D. Kan.) ("[T]he court will not grant the motion [for a more definite statement] merely because the pleading lacks detail; rather, the omitted but desired details must be reasonably necessary to enable a responsive pleading in the form of a denial or admission.") (citation omitted).

    As stated, the Complaint alleges NMED violated the NMHWA and RCRA by including a definition of hazardous waste in the Permit that exceeds the scope of those statutes and, therefore, exceeds RCRA's waiver of sovereign immunity.  (Doc. 1) at 4.  While NMED would like the United States to "specify[] the aspect of the Permit's hazardous waste definition that is allegedly flawed," the Complaint explains the Permit's hazardous waste definition is inconsistent with the NMHWA's and RCRA's definitions of hazardous waste and provides citations to all three definitions.  The Court finds this is sufficiently particular for NMED to compare the definitions and prepare a responsive pleading in the form of a denial or admission.  Accordingly, the Court denies NMED's alternative request for a more definite statement.

*III. Conclusion*

For the reasons stated above, the Court declines to abstain from exercising jurisdiction over this case, denies NMED's motion to dismiss for failure to state a claim, and denies NMED's alternative motion for a more definite statement.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or in the Alternative Motion for a More Definite Statement, (Doc. 4), is denied.

_____
UNITED STATES DISTRICT JUDGE