IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                   Case No. 19-CV-46 KG/SMV

NEW MEXICO ENVIRONMENT
DEPARTMENT, and JAMES KENNEY,
Secretary (in his official capacity),

     Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment. Plaintiff United States first filed its Motion for Summary Judgment. (Doc. 58). Defendants New Mexico Environment Department and James Kenney, Secretary, responded and cross-motioned for summary judgment. (Doc. 59). Both parties, in turn, replied. (Docs. 60, 61). The Court, having considered the briefing and the applicable law, construing the matter as a state administrative appeal, and finding the New Mexico Hazardous Waste Act requires the case go before the New Mexico Court of Appeals, denies both motions and dismisses the case without prejudice.

I.   *Background*

This case ascends from the runways of Cannon Air Force Base ("Cannon AFB" or "the Base") near Clovis, New Mexico, where the Air Force uses hazardous perfluoroalkyls chemicals, commonly referred to as PFAS, to extinguish jet fuel fires. The United States challenges certain terms in a hazardous waste permit issued by the New Mexico Environment Department (NMED) for violating the New Mexico Hazardous Waste Act (HWA), NMSA § 74-4-1 *et seq*., and its implementing regulations.

The Federal Government has recognized that PFAS have the following potential detrimental effects, among others, on humans and animals: increased cancer risk, liver damage, decreased fertility, heightened risk of asthma and thyroid disease, higher cholesterol, and a decreased antibody response to vaccines. Agency for Toxic Substances and Disease Registry, U.S. Department of Health and Human Services, Toxicology Profile for Perfluoroalkyls (2021), available at https://www.atsdr.cdc.gov/ToxProfiles/tp200.pdf.[1]  Indeed, the Air Force acknowledged the Environmental Protection Agency's drinking water health advisory related to PFAS during the permitting process in this case. Administrative Record at 45, (Doc. 49) Ex. 3 at 45.

That Cannon AFB uses and disposes of PFAS is not in dispute—the underlying administrative record extensively covers releases of PFAS at the Base. AR 34–131; 686–10558. Around Cannon AFB, PFAS runoff has reportedly created a "plume" in the groundwater system, effectively destroying local dairy operations. Theresa Davis, *Cannon PFAS Destroyed Longtime Clovis Farmer's Dairy*, Albuquerque Journal, May 29, 2022, at https://www.abqjournal.com/2503560/cannon-pfas-destroyed-longtime-clovis-farmers-dairy.html.  PFAS has also appeared in Clovis' municipal drinking water. Press Release, New Mexico Environment Department, PFAS Detected in Clovis Public Drinking Water System (Feb. 10, 2020), available at https://www.env.nm.gov/wp-content/uploads/2020/02/2020-02-10-Clovis-PR-final.pdf.

The Resource Conservation and Recovery Act (RCRA) is the primary federal statute regulating disposal of solid and hazardous waste. 42 U.S.C. § 6901 *et seq.*  New Mexico can

---

[1] The court takes judicial notice of this and other facts. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of . . . facts which are a matter of public record") abrogated on other grounds, *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

regulate a federal installation like Cannon AFB because RCRA allows the EPA to authorize a

state to enforce its own hazardous waste program in lieu of the federal program.  42 U.S.C. §

6926(b).  New Mexico is one such state which has been authorized to manage its own program,

codified in the state's Hazardous Waste Act.  *See also* 40 C.F.R. § 272.1601 (authorizing the

New Mexico hazardous waste program); NMAC § 20.4.1 (HWA implementing regulations).

In conjunction with that authorization, RCRA also contains an explicit waiver of federal

sovereign immunity, making federal facilities "subject to" state requirements, "both substantive

and procedural[,]… in  the same manner, and to the same extent, as any person is subject to such

requirements."  42 U.S.C. § 6961(a); *cf. United States v. Washington*, 142 S. Ct. 1976, 1982

(2022) ("The Constitution's Supremacy Clause generally immunizes the Federal Government

from state laws that directly regulate or discriminate against it. Congress, however, can authorize

such laws by waiving this constitutional immunity." (internal citations omitted)).

States are empowered to regulate above and beyond RCRA, which merely establishes

minimum standards.  42 U.S.C. §§ 6926, 6929; 40 C.F.R. § 271.1(i) ("nothing in this subpart

precludes a State from…[a]dopting or enforcing requirements which are more stringent or more

extensive than those required under this subpart.");  *United States v. State of Colorado*, 990 F.2d

1565, 1569 (10th Cir. 1993) ("RCRA sets a floor not a ceiling for state regulation of hazardous

wastes.").[2]

---

[2] At the time the Permit was issued, the HWA, NMSA § 74-4-4(A), required the New Mexico
Environmental Improvement Board to promulgate regulations "equivalent to and no more
stringent than federal regulations."  2010 N.M. Laws ch. 27 § 2 (emphasis added).  In 2021,
however, the legislature amended the HWA such that § 74-4-4(A) now requires the Board to
adopt rules "that are equivalent to and at least as stringent as federal regulations."  2021 N.M.
Laws ch. 133, § 3 (emphasis added).

RCRA mandates that hazardous waste permits, like the one at issue in this case, require "corrective action for all releases of hazardous waste or constituents from any solid waste management unit[.]" 42 U.S.C. § 6924(u).  HWA incorporates the same requirement.  NMSA § 74-4-4.2(B) ("Hazardous waste permits shall require corrective action for all releases of hazardous waste or constituents....").  According to this legal authority, and against the backdrop of PFAS's known use and harmful impacts, when NMED renewed Cannon AFB's hazardous waste permit, it included PFAS as a hazardous waste requiring corrective action.  Permit at § 1.12, AR 011349, (Doc. 49) Ex. 21 at 213.

The United States initiated this lawsuit to challenge that definition of hazardous waste. Critically, the nature of that challenge has evolved over the course of the litigation.  Originally, the United States alleged that the Permit's definition of hazardous waste exceeded the scope of Congress' waiver of sovereign immunity in 42 U.S.C. § 6961(a).  (Doc. 1) at ¶ 22.  NMED filed a Motion to Dismiss, arguing for abstention in favor of the parallel state case[3] and testing the sufficiency of the Complaint generally.  (Doc. 4) at 4–9.  The Court denied the Motion, reasoning at that time that the abstention doctrines did not apply, the United States stated a plausible claim, and the Court had proper jurisdiction all because the important federal question—sovereign immunity—prevailed.  *See generally* (Doc. 26); *also*, *id.* at 15 ("[T]he issue in this case will involve consideration of federal law in interpreting the contours of RCRA's waiver of sovereign immunity[.]").

Subsequently, the United States filed an Amended Complaint which substantially changed its claims.  *See* (Doc. 56).  The United States abandoned its sovereign immunity

---

[3] That case, *United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Jan. 17, 2019), is currently stayed pending resolution of this case, *see id.* (Order filed April 10, 2019).

allegation.  In its place, it now unequivocally appeals the Permit's terms directly under New

Mexico's Hazardous Waste Act:

> The Permit constitutes in whole or in part, a "final administrative action," subject
> to judicial review pursuant to [NMSA § 74-14-4(A)].  Under that statute, the action
> shall be set aside if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not
> supported by substantial evidence in the record; or (3) otherwise not in accordance
> with law."  [NMSA § 74-14-4(C)].

(Doc. 56) at ¶ 17; *see also id.* at ¶¶ 2–3, 25–31.

The United States seeks (1) a declaration that certain Permit terms are inconsistent with

the scope of "corrective action" in the HWA and in its implementing regulations; and (2) a

declaration that the terms are arbitrary, capricious, or an abuse of discretion, not supported by

substantial evidence in the record, or otherwise not in accordance with the law.  *Id.* at 7.  It

requests injunctive relief to set aside the allegedly unlawful terms of the Permit.  *Id.*  These

claims bring the federal claims into alignment with the claims asserted in the state case.  *See*

*United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Jan. 17, 2019);

*also* (Doc. 26) at 5 (describing the parallel state case).

In its Motion for Summary Judgment, the United States again urges this Court to construe

the case as a state administrative appeal:

> Neither this Court nor the Tenth Circuit has addressed the standard of review for a
> motion for summary judgment on a claim under the HWA…. Under *Olenhouse* [*v.
> Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994)], a district court reviewing
> agency action "acts as an appellate court" and "employs summary judgment to
> decide, as a matter of law, whether the agency action is supported by the
> administrative record and otherwise consistent with the [Administrative Procedures
> Act] standard of review."  *N.M. Health Connections v. U.S. Dep't of Health &
> Human Servs.*, 946 F.3d 1138, 1161 (10th Cir. 2019) (internal quotation marks and
> alteration omitted).  This review is limited to the administrative record before the
> agency at the time the decision was made.  *Id.* at 1161-62.

(Doc. 58-1) at 14–15.[4]

Now the parties present competing motions for summary judgment which raise myriad issues, the core of which is whether the Permit's terms run afoul of the HWA's standard of review. The Court, however, does not reach the substance of those issues. Instead, the Court determines it lacks jurisdiction to hear the claims in the Amended Complaint and dismisses the case without prejudice.

II.    *Analysis*

The Court concludes that an HWA administrative appeal, as the United States brings in its Amended Complaint, must properly be decided by the New Mexico Court of Appeals and this Court is without jurisdiction. Because the United States raises sovereign immunity as an argument against subjecting it to the issue preservation requirement, the Court addresses that federal question before otherwise dismissing the case.

A.   *The Court Lacks Jurisdiction to Hear this Claim*

1.   *The HWA Directs Permit Appeals Only to the New Mexico Court of Appeals*

The HWA, which authorizes this appeal, dictates exactly how such an action must be brought:

> A. Any person who is or may be affected by any final administrative action of the board or the secretary may appeal to the *court of appeals* for further relief within thirty days after the action. All appeals shall be upon the record before the board or the secretary.
> …
> C. Upon appeal, the *court of appeals* shall set aside the action only if it is found to be:
> (1)    arbitrary, capricious or an abuse of discretion;
> (2)    not supported by substantial evidence in the record; or

---

[4] In many instances, the original pagination of the briefing, as included by the parties in the document footer, differs from the pagination applied to documents by the Court's electronic filing program and appearing in the header of each page. The Court refers here and elsewhere to the ECF-generated page numbers.

(3)    otherwise not in accordance with law.

NMSA § 74-4-14 (emphasis added).  No court other than the New Mexico Court of Appeals is

contemplated.  That is, by the clear terms of the HWA, the New Mexico Court of Appeals is the

only proper venue for a permit appeal.

      2.   *Because the HWA Creates an Exclusive Venue for Administrative Appeals,*
              *this Court is Stripped of Jurisdiction*

The HWA, by vesting exclusive jurisdiction for permit appeals in the New Mexico Court

of Appeals, precludes other courts from adjudicating such claims.  The New Mexico Legislature

may create specific and exclusive appellate procedures under state law.  "The Legislature has the

authority to establish appellate jurisdiction and to create a right of appeal." *Cordova v. Cline*,

2017-NMSC-020, ¶ 15 (citing, among other sources, N.M. Const. art. VI, § 2); *see also* Rule 1–

074(A) NMRA (stating that "appeals from administrative agencies [may be heard by] the district

courts *when there is a statutory right of review to the district court*" (emphasis added)).

Congress may also statutorily vest exclusive administrative appellate jurisdiction in

specific courts at the expense of district courts' ordinary jurisdiction.  "A statutory scheme of

administrative review followed by judicial review in a federal appellate court can preclude

district court jurisdiction over a plaintiff's statutory and constitutional claims if Congress' intent

to preclude district court jurisdiction is 'fairly discernible in the statutory scheme.'" *Sec. People,*

*Inc. v. Iancu*, 971 F.3d 1355, 1362 (Fed. Cir. 2020) (cleaned up), *cert. denied sub nom. Sec.*

*People, Inc. v. Hirshfeld*, 141 S. Ct. 2701, 210 L. Ed. 2d 871 (2021).  All told, provided there is

"meaningful review" of given claims, Congress may require parties "to proceed exclusively

through the statutory review scheme" on an administrative appeal, skipping the federal district

courts, even where parties "raise constitutional challenges to federal statutes." *Elgin v. Dep't of*

*Treasury*, 567 U.S. 1, 10 (2012).

Federal courts have repeatedly applied these principles to federal statutory schemes. *See id.* (holding Civil Service Reform Act provisions entitling employee to appeal before Merit Systems Protection Board and seek judicial review in Federal Circuit provided exclusive avenue to judicial review, and allowing employee to challenge employment action first in district court would seriously undermine CSRA's objective of creating integrated scheme of review); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) (holding that administrative review scheme of the Federal Mine Safety and Health Amendments Act of 1977, under which challenges are reviewed by the Federal Mine Safety and Health Review Commission and then by appropriate court of appeal, precluded district court jurisdiction); *Sec. People, Inc.*, 971 F.3d at 1361–1363 (holding that the America Invents Act provided exclusive review of certain Patent Trial and Appeal Board decisions at the Court of Appeals for the Federal Circuit and thus precluded district courts from exercising Administrative Procedure Act jurisdiction over patent owner's challenge.).

Turning to this case, the Court finds that the "fairly discernable" intent of both the New Mexico Legislature and Congress is that all litigants, including the United States, must appeal hazardous waste permits to the New Mexico Court of Appeals.  As described above, the New Mexico Legislature clearly directed that permit appeals be brought directly and exclusively to the New Mexico Court of Appeals.

Congress' parallel intent is discernable in two ways.  First, when New Mexico passed the HWA, it did so under authority granted by Congress in RCRA.  This shows Congress' general approval of HWA's appellate scheme.  And second, Congress demonstrated its specific intent that the United States follow HWA's appellate procedures when it waived sovereign immunity. RCRA explicitly subjects the federal government to "*all* Federal, State, interstate, and local requirements, *both substantive and procedural*[.]"  42 U.S.C. § 6961(a) (emphasis added).

Based on this, the Court determines that the United States exposed itself to the HWA in its entirety, including its provisions for appealing permit terms. The Court thus concludes that these fairly discernable expressions of legislative intent divest this Court of jurisdiction.

Also weighing in favor of this conclusion, the Supreme Court has found that federal courts do not generally have jurisdiction over state administrative appeals. *E.g.*, *Chi., R. I. & P. R. Co. v. Stude*, 346 U.S. 574, 581 (1954) ("The United States District Court…does not sit to review on appeal action taken administratively or judicially in a state proceeding. A state legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction." (internal quotation marks and citations omitted)). The Tenth Circuit faithfully applies that Supreme Court precedent. *Trapp v. Goetz*, 373 F.2d 380, 383 (10th Cir. 1966) ("[T]he United States District Court had no power to consider an appeal from the state administrative tribunal. Such a proceeding is not within its statutory jurisdiction."). As one court put it: "Permitting the bypassing of state procedures would lead to federal district courts becoming courts of review for state administrative agencies and to needless conflict between federal and state governments." *Allegheny Airlines, Inc. v. Pa. Pub. Util. Com.*, 319 F. Supp. 407, 414 (E.D. Pa. 1970).

Finally, the United States has been a party to HWA appeal actions in front of the New Mexico Court of Appeals before, suggesting by history and practice that it is not only amenable to that court but that it knowingly submitted to it as the review body for HWA permit appeals. *E.g.*, *Nuclear Waste P'ship, LLC v. Nuclear Watch N.M.*, 2022-NMCA-014 (New Mexico Court of Appeals determining that amendment to New Mexico hazardous waste permit issued to United States Department of Energy did not violate HWA appeal standard). This phenomenon is not novel; Congress , at times, subjects the United States to litigating state-governed issues in

state courts.  For instance, in mass water rights adjudications, regarding which the McCarren

Amendment waived sovereign immunity in deference to state procedures, 43 U.S.C. § 666, the

United States must bring and defend water-rights claims according to states' requirements,

whether at state administrative agencies or state courts.  *E.g.*, *United States v. State of Or.*, 44

F.3d 758, 770 (9th Cir. 1994) (holding "that the Klamath Basin adjudication is in fact the sort

of adjudication Congress meant to require the United States to participate in when it passed the

McCarran Amendment").

      The intent of the state legislature was to create an exclusive permit review process at the

New Mexico Court of Appeals and the intent of Congress was to subject the United States to that

procedure.  Moreover, federal courts do not generally adjudicate state administrative appeals.

For these reasons, this Court lacks jurisdiction over the permit appeal claims in this action.

      3.  *That the United States is Plaintiff Does Not Grant This Court Jurisdiction*

      The Court plausibly has jurisdiction over this action from other independent sources.  The

Court addresses those here, concluding none overcome the conclusion that the state appellate

scheme strips this Court of jurisdiction.

      When the United States first brought this action testing whether the Permit fit within

Congress' waiver of sovereign immunity in RCRA, it asserted jurisdiction was proper via both

28 U.S.C. § 1331 (federal question) and § 1345 (United States as plaintiff).  (Doc. 1) at ¶ 5.  As

this Court reasoned at the motion to dismiss stage, *see* (Doc. 26),  that claim presented a valid

federal question which was appropriately adjudicated by this Court.  *E.g.*, *United States v. State

of N.M.*, No. CIV. 90-276 SC, 1992 WL 437983, at *1 (D.N.M. Aug. 13, 1992), aff'd, 32 F.3d

494 (10th Cir. 1994) (federal court determining that New Mexico hazardous waste permit issued

to Los Alamos National Laboratory did not exceed waiver of immunity).

In its now-operative Amended Complaint, however, the United States challenges the Permit in a second way—one available to any permit holder—by attacking its validity under the HWA itself.  The United States still asserts jurisdiction is proper based on both federal question jurisdiction and because the Government is the plaintiff.  (Doc. 56) at ¶ 4.

The Court, however, concludes that the Amended Complaint insufficiently supports federal question jurisdiction.  "A case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (internal quotations omitted).  The Amended Complaint references RCRA, but it does not assert the cause of action is authorized by RCRA.  Nor does it raise sovereign immunity.  Instead, the claim is presented as a state administrative appeal based on violations of a state statute.  (Doc. 56) at ¶¶ 12-17, 26-31.  Without the allegation that the Permit exceeds the wavier of sovereign immunity, the Amended Complaint does not present a federal question.

That leaves the United States to invoke this Court's jurisdiction as the plaintiff.  That route to attaining jurisdiction, however, is constrained: "*Except as otherwise provided by Act of Congress*, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345.

The Court concludes that Congress' general and qualified grant of jurisdiction in 28 U.S.C. § 1345 must give way to Congress' specific and unqualified waiver of sovereign immunity subjecting federal facilities to authorized state hazardous waste permitting schemes.

Indeed, in *Trapp*, the Tenth Circuit considered how the district courts' lack of jurisdiction over state administrative appeals conflicted with the affirmative presence of another form of jurisdiction—diversity—and found diversity could not overcome the defect. *Trapp v. Goetz*, 373 F.2d 380, 383 (10th Cir. 1966) ("[T]he presence of diversity of citizenship and of the requisite amount in controversy is not always sufficient to provide jurisdiction to a United States District Court where the proceedings originate in the administrative or judicial acts of a state.").

For these reasons, the Court determines that the United States being the plaintiff in this action is insufficient to overcome its lack of jurisdiction over a state administrative appeal with exclusive jurisdiction in the state court.

4.   Colorado River *Counsels Abstention*

The *Colorado River* abstention doctrine also bears on this case. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). As brief background, the Court earlier determined *Colorado River* abstention was inappropriate in part because "the issue in this case will involve consideration of federal law in interpreting the contours of RCRA's waiver of sovereign immunity." (Doc. 26) at 15. Because the United States omitted sovereign immunity from its Amended Complaint, *Colorado River* abstention must now be reconsidered. The Court concludes that even if the HWA does not divest this Court of subject matter jurisdiction outright, which it does for the reasons described above, *Colorado River* counsels abstention in deference to the parallel state proceeding already before the New Mexico Court of Appeals.

The *Colorado River* abstention doctrine is a sort of catch-all doctrine which "falls within none of the abstention categories" and which is triggered "in situations involving the contemporaneous exercise of concurrent jurisdictions…by state and federal courts." *Colorado River,* 424 U.S. at 817. The "avoidance of duplicative litigation…is at the core of the *Colorado*

*River* doctrine." *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013). The doctrine "concerns itself with efficiency and economy." *Id.* Though declining to exercise jurisdiction based on a parallel state case is appropriate only in "exceptional" circumstances, the Supreme Court has advised that such circumstances nevertheless exist "for reasons of wise judicial administration." *Colorado River*, 42 U.S. at 818.

The Supreme Court has set forth several factors to consider in determining whether "exceptional circumstances" exist. *Id.* at 818. Before examining these factors, however, a federal court "must first determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* Such is the case here: the claims before the New Mexico Court of Appeals and this Court appear nearly identical. *Compare* Docketing Statement in *United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Apr. 12, 2019) *with* (Doc. 56).

Moving on to the factors, the Supreme Court has identified four to consider: "(1) whether the state or federal court first assumed jurisdiction over the same [property]; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums." *D.A. Osguthorpe Fam.*, 705 F.3d at 1234 (citing *Colorado River*, 42 U.S. at 818). The Supreme Court has further explained that the *Colorado River* factors are not a "mechanical checklist," but rather that "careful balancing" is required and "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

To begin, this Court finds that the first of the *Colorado River* factors does not apply to this case. Neither the state nor federal court has acquired jurisdiction over property in this litigation. The Court also finds the second factor, the relative inconvenience of the federal forum, deserves little weight. The New Mexico Court of Appeals usually, but not always, sits in Albuquerque, while this Court is in Las Cruces but may also hear cases in Albuquerque. Either way, both courts are distant from Cannon AFB and neither party has suggested any physical or logistical inconvenience in either forum. The last factor, the order of jurisdiction, also weighs little on the decision. Concurrent jurisdiction was obtained on the same day; neither court waded deep into litigation before the other.

The third factor, however, tips the scales strongly in favor of abstention. The Tenth Circuit has emphasized that the "paramount consideration in *Colorado River* was the third factor: the danger of piecemeal litigation." *D.A. Osguthorpe*, 705 F.3d at 1234 (citing *Moses H. Cone*, 460 U.S. at 19). The Supreme Court added two additional factors for consideration which supplement this Court's analysis: whether "federal law provides the rule of decision on the merits," *Moses H. Cone*, 460 U.S. at 23, and whether the state-court proceedings adequately protect the litigants' rights, *id.* at 26–27. All three of these factors combined lead this Court to the conclusion, born of "wise judicial administration," that it should defer to the state court.

Because the current state action is stayed, there is not an immediate risk of piecemeal litigation, but the threat looms on the horizon. Federal law does not provide the rule of decision in this case. Instead, the state's statutory standard of review applies—that is, whether the permit terms are (1) arbitrary, capricious, or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law. NMSA § 74-4-14(C). Those definitions are further construed and explained in state common law. *E.g., Garcia v. New*

14

*Mexico Hum. Servs. Dep't*, 1979-NMCA-071, ¶ 6 (adopting, from Wisconsin Supreme Court, standard that arbitrary and capricious action by an administrative agency is evident "when it can be said that such action is unreasonable or does not have a rational basis."), *rev'd on other grounds,* 1980-NMSC-025, ¶ 6. Similarly, one of the State's defenses is that the claims were not properly preserved in the administrative record, which is another question requiring application of state rules and common law.  Federal courts can, of course, apply state common law, but without further consideration, this Court does not know if those issues are clear, will necessitate reasoned guesses, or may even require certification to the state courts.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  This is where the piecemeal litigation concern begins.

That concern is only amplified when considering the impact on future cases.  Over the long run, if the United States is allowed to avoid the state procedure by invoking federal jurisdiction any time any federal facility in the state seeks to challenge a permit, there is a risk of developing a body of common law at the state which applies to all permit holders except the United States, and potentially divergent or conflicting precedents in federal court which apply distinctively to the United States.  Thus, the Court concludes that in this unique situation—a state-law issue analyzed under state-law standards and regarding which Congress has expressly waived sovereign immunity—it is wise that the state courts adjudicate the issue and develop the law on point.

The Court concludes it is divested of subject matter jurisdiction by RCRA and the HWA, but even if it is not, it ought to wisely abstain and defer to the New Mexico Court of Appeals.

B. *Sovereign Immunity Does Not Protect the United States from the HWA Appellate Process and its Rules*

Despite the above analysis, there is one narrow federal question presented in the motions for summary judgment, which the Court now addresses.  NMED argues that the United States'

claims are barred by a failure to preserve them during the administrative process below. (Doc. 59) at 6-10. The United States counters that the preservation requirement is inappropriately applied to the Government because of sovereign immunity. (Doc. 60) at 10-14.

This Court does not determine whether the United States' claims are waived for failure to preserve. That is properly left to the New Mexico Court of Appeals. Instead, this Court rules on the narrow question whether the federal government is immunized from preservation requirement in the first place. The Court determines that it is not. Before addressing the United States' specific arguments, the Court addresses sovereign immunity generally.

Ordinarily, sovereign immunity is a shield which protects the United States from suits when it is a defendant. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued[.]") (citing *United States v. Sherwood,* 312 U.S. 584, 586 (1941)). Similarly, sovereign immunity protects the federal government from regulation by states. *Mayo v. United States,* 319 U.S. 441, 445 (1943); *United States v. Washington,* 142 S. Ct. 1976, 1982 (2022). Congress, however, may explicitly waive sovereign immunity and authorize the states to regulate federal instrumentalities. *Washington,* 142 S. Ct. at 1982; *United States v. State of N.M.,* 32 F.3d at 497. As previously noted, RCRA contains one such explicit waiver of sovereign immunity which allows states to issue permits to federal facilities which manage and dispose of hazardous waste. 42 U.S.C. § 6961. Based on this the United States may invoke sovereign immunity as a plaintiff—that is, when it challenges a state action for exceeding the scope of a previous waiver of immunity. *E.g., United States v. State of N.M.,* 32 F.3d 494 (denying United States' challenge of RCRA hazardous waste permit issued to Los Alamos National Laboratory for including radioactive waste).

Importantly, this is not one of those cases.  Under the Amended Complaint, the United States does not challenge the substantive terms of the permit as exceeding the waiver of sovereign immunity.  *Generally* (Doc. 56).  Instead, it turns the case into an inquiry about whether the permit conflicts with state statute and it invokes sovereign immunity to sidestep a requirement of the administrative review process.

As a general matter, this Court concludes that sovereign immunity does not exempt the United States from administrative procedure and rules.  As explained, RCRA subjects federal facilities to the entirety of the HWA, including the appeal process.  The Court is aware of no caselaw, and the United States cites to none, which stands for the proposition that the federal government is immunized from procedural requirements where it is a consenting participant.  That general proposition settled, the Court addresses the United States' three specific arguments in turn.

First, the United States counters that imposing issue preservation on it subjects it to permit terms that exceed the scope of Congress' waiver of sovereign immunity.  (Doc. 60) at 12–14.  But Congress' waiver of sovereign immunity in RCRA is broad and authorizes states to regulate above and beyond RCRA.  42 U.S.C. § 6926; 40 C.F.R. § 271.1(i).  The United States' claim that the permit violates New Mexico <u>state</u> law is of no consequence in analyzing whether Congress made the federal government susceptible to state regulation.  This is to say nothing of the fact that the United States abandoned this argument in its Amended Complaint.

Second, the United States contends that even if New Mexico courts require issue preservation, that requirement is outside of Congress's waiver of sovereign immunity in RCRA and does not apply to the Air Force.  (Doc. 60) at 10–11.  This is so, the United States argues, because the waiver extends only to the text of HWA and its regulations—neither of which

explicitly require issue preservation. *Id.* Even if it were true that Congress only intended to waive sovereign immunity as far as the strict text of the HWA goes, the HWA specifically contemplates permit appeals, requiring them to be made to the New Mexico Court of Appeals. NMSA § 74-4-14. It does not follow that Congress submitted to the HWA appellate process but not to the courts' rules governing that process.

Third, the United States argues that imposing the preservation requirement is akin to deeming the Air Force to have waived sovereign immunity during the permitting process, which it cannot do. (Doc. 60) at 13. The United States relies on this caselaw:

> Nor can the actions of the Secretary, or any government official or attorney, act as a waiver or abandonment of the United States' sovereign immunity. Because waiver must be unequivocally expressed by Congress, officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court.

*Governor of Kansas v. Kempthorne*, 516 F.3d 833, 845 (10th Cir. 2008) (internal quotations omitted). The problem with this argument is that Congress waived sovereign immunity in RCRA. Whether the Air Force waived it any further is not in question. Rather, the question is whether the United States waived certain legal challenges during the permitting process. That is a question of state statutory construction and administrative law which does not implicate Congress' operative waiver of immunity. It is a category error to conflate waiver of a discrete legal challenge with waiver of immunity.

For all of these reasons, the Court concludes the United States cannot use sovereign immunity as a defense to an accusation that it failed to preserve its legal challenges.

III.   *Conclusion*

The United States brings this challenge to its hazardous waste Permit via the state's Hazardous Waste Act. Congress subjected the federal government to that state law and all of its

procedural requirements.  Under the clear terms of the HWA, Permit challenges must be brought to the New Mexico Court of Appeals, and this Court is divested of jurisdiction.  For this reason, the Court does not reach the merits of the issues presented in the motions for summary judgment. The Court denies both Motions, (Docs. 58 and 59), and dismisses this case without prejudice.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE